UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:16-CV-382-TBR-LLK

DELMAS PHILPOT, PLAINTIFF

v.

MICROBILT CORPORATION, DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on cross motions for summary judgment and a motion for sanctions. Defendant Microbilt Corporation filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. [R. 20.] Plaintiff Delmas Philpot responded, [R. 24], and Microbilt replied, [R. 25]. Plaintiff Philpot also filed a Motion for Summary Judgment pursuant to Rule 56, [R. 21], to which Microbilt responded, [R. 23], and Philpot replied, [R. 26]. Lastly, Microbilt filed a Motion for Sanctions, [R. 29], and Philpot responded, [R. 31]. The deadline for Microbilt to file a reply has passed. This matter is now ripe for adjudication. For the reasons stated herein, Microbilt's Motion for Summary Judgment, [R. 20], is **DENIED**, Philpot's Motion for Summary Judgment, [R. 21], is **DENIED**, and Microbilt's Motion for Sanctions, [R. 29], is **DENIED**.

## BACKGROUND

The general facts of this case are described in the Court's prior opinion, *Philpot v. Microbilt Corp.*, No. 3:16-CV-00382-TBR, 2016 WL 7395289 (W.D. Ky. Dec. 21, 2016). Briefly, Philpot filed this action against Microbilt arguing that Microbilt violated 15 U.S.C. § 1681k of the Fair Credit Reporting Act (FCRA), as well as defamed him by providing an inaccurate consumer report to his prospective employer, Fenton & McGarvey. [R. 1-2 at 4

(Complaint).] The Court dismissed Philpot's claim of defamation in the prior opinion. *See Philpot*, No. 3:16-CV-00382-TBR, 2016 WL 7395289, at *4. However, Philpot's claim for violating § 1681k of the FCRA still stands, which is the subject of the cross motions for summary judgment before the Court.

More recently, Microbilt filed a Motion for Sanctions arising out of Philpot including confidential documents, produced in accordance with the Stipulated Protective Order, [R. 19], in his Motion for Summary Judgment, [R. 21]. The Court will first address the cross motions for summary judgment followed by Microbilt's Motion for Sanctions.

## DISCUSSION

**I.     Motions for Summary Judgment**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the defendant must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Plaintiff's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming each defendant satisfies its burden of production, Plaintiff "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

The FCRA imposes civil liability on any "consumer reporting agency," or CRA for short, which negligently fails to comply with its obligations under the Act. 15 U.S.C. § 1681o. In fact, any person who is found negligent in failing to comply with its FCRA duties is liable to the consumer for actual damages sustained as a result of the failure. *Miller v. Wells Fargo & Co.*, No. 3:05-CV-42-S, 2008 WL 793683, at *4 (W.D. Ky. Mar. 24, 2008) (citing 15 U.S.C. § 1681o) (Simpson, J.). Of those many obligations, the one pertinent to this action is found in § 1681k(a). Under that provision, a CRA which furnishes a report containing information likely adverse to a consumer's employment prospects must notify the consumer at the time the report is furnished, *id.* § 1681k(a)(1), unless it maintains strict procedures designed to ensure that the information reported is complete and up-to-date, *id.* § 1681k(a)(2).

Here, Philpot argues he is entitled to summary judgment due to Microbilt's failure to maintain "strict procedures" as required by § 1681k(a)(2).[1] In contrast, Microbilt argues summary judgment should be granted in its favor due to evidence that it maintained such "strict procedures." Furthermore, Microbilt argues that it is also entitled to summary judgment due to

---

[1] For purposes of summary judgment, Microbilt concedes that it is a CRA and that it reported public record information likely to adversely impact Philpot's ability to obtain employment. [R. 23 at 2 (Microbilt Response to Motion for Summary Judgment).] Furthermore, Microbilt concedes that it did not send a notification of its report to Philpot, therefore, it does not rely upon § 1681k(a)(1) as a defense. [*Id.*]

3

Philpot's failure to prove that its alleged violation of the FCRA caused him to suffer actual damages. *See* 15 U.S.C. § 1681o. The Court will address both issues in turn.

### A. Damages Under §1681o

Section 1681o states that any person who negligently fails to comply with the FCRA with respect to a consumer, is liable to that consumer for "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o. "To prevail on claims under this section, Plaintiff must establish (1) actual damages, and (2) a causal relationship between the damage and [defendant's] alleged violations of the FCRA." *Moore v. First Advantage Enter. Screening Corp.*, No. 4:12-CV-00792, 2013 WL 1662959, at *4 (N.D. Ohio Apr. 17, 2013) (citing *Elsady v. Rapid Global Bus. Solutions, Inc.*, No. 09–11649, 2010 WL 742852, at *3 (E.D. Mich. Feb. 26, 2010). "The burden of proving causation remains with Plaintiff at all times to prove that the alleged FCRA violation was [a] substantial factor in causing the asserted actual damages." *Id*. (citing *Garrett v. Trans Union, LLC*, No. 2:04-CV-00582, 2006 WL 2850499, at *11 n. 5 (S.D. Ohio Sept. 29, 2006)).

Here, Philpot claims actual damages of lost wages and benefits of prospective employment with Fenton and McGarvey, emotional distress, and injury to his professional reputation. [R. 1-2 at 5.] In its Motion for Summary Judgment, Microbilt argues that Philpot has failed to prove that Microbilt's alleged violation of the FCRA caused his damages and has offered no evidence of damages from emotional distress "beyond his own self-serving testimony." [R. 20-1 at 7-8 (Microbilt Motion for Summary Judgment).]

#### 1. Lost Wages and Benefits

In arguing that Philpot has failed to prove the causation factor of §1681o, Microbilt cites three different cases from the Sixth Circuit. [*See* R. 20-1 at 7.] All are distinguishable from the

matter at hand because the plaintiffs therein failed at the summary judgment stage due to a total lack of evidence. *See Winchester v. City of Hopkinsville*, 93 F. Supp. 3d 752, 772 (W.D. Ky. 2015) ("Winchester cannot demonstrate that the City's hiring decision was based upon inaccurate information or that he was otherwise harmed by the violation. This lack of evidence of damages proves fatal to his claim.") (Russell, J.); *McComas v. Experian Info. Sols., Inc.*, No. 5:14-371-DCR, 2015 WL 4603233, at *5 (E.D. Ky. July 29, 2015) (granting summary judgment in favor of defendant when plaintiff failed to provide evidence of harm or impact to her credit as a result of incorrect data beyond the general claim that she was harmed); *Garrett*, No. 2:04-CV-00582, 2006 WL 2850499, at *3 (holding that the plaintiff was never actually denied credit based on an alleged inaccurate report nor was that credit report distributed to a third party).

In contrast to these cases, Philpot has presented evidence to support his claim of lost wages. First, Philpot argues that there was a substantial likelihood that he was to be hired because he advanced to the background check phase of Fenton & McGarvey's hiring procedure. In her deposition, Fenton & McGarvey's corporate representative, LeShana Percell, stated: "There has to be some level of confidence from that hiring manager that's conducting the interview for them to even want to push that person through the [background check] process." [R. 20-3 at 7 (34:12-15) (Percell Depo.).] Secondly, Philpot testified that he was told after his interview at Fenton & McGarvey that he would be hired as long as his background check did not reveal any problems, [R. 21-5 at 14 (50:5-8) (Philpot Depo.).], and, thereafter, he was told over the phone by an unknown employee of Fenton & McGarvey that he would not be hired due to "something to do with your background check, something you did in North Carolina." [*Id.* (53:12-13).] In rebuttal, Microbilt provides further testimony from Percell that she was not aware of any such phone calls to Philpot regarding his background check, and she stated that "it's not a

normal practice to give verbal responses over the phone regarding backgrounds." [R. 20-3 at 8 (46:12-16).] Lastly, Philpot provided a letter from Fenton & McGarvey addressed to Philpot informing him that he would not be considered for employment due "in part from information [they] received from a consumer report furnished by" Microbilt. [R. 21-4 at 2 (Letter to Philpot).] Microbilt concedes that this letter is credible evidence of "Philpot becoming aware that he was no longer being considered for employment," but it emphasizes that this only leaves a period of two weeks of unemployment before Philpot obtained a job with another firm. [R. 25 at 3 (Microbilt Summary Judgment Reply).]

After viewing the record in the light most favorable to the nonmoving party, here Philpot, it is clear that a genuine dispute over the material facts exists. Unlike the cases cited by Microbilt, Philpot has provided at least some evidence that the actions of Microbilt possibly caused him harm. The Court acknowledges the weaknesses in Philpot's evidence pointed out by Microbilt; however, the disagreement here is not "so one-sided that one party must prevail as a matter of law." *Back*, 694 F.3d at 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52). Ultimately, the disagreement over whether Microbilt's consumer report caused Philpot to suffer lost wages is sufficient to require submission to a jury. *Id.*

  2. **Emotional Distress**

The Sixth Circuit has stated: "An injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements." *Bach v. First Union Nat. Bank*, 149 F. App'x 354, 361 (6th Cir. 2005) (citing *United States v. Balistrieri*, 981 F.2d 916, 931–32 (7th Cir. 1992)). Here, Philpot testified that, due to Microbilt's adverse report and Fenton & McGarvey's subsequent refusal to hire him: he has endured "a lot

of mental anguish, embarrassment," [R. 21-5 at 22 (85:13-14)]; endured additional stress from living on $1,000 per month in unemployment benefits, which prevented him from being able to pay his bills on time and allegedly hurt his credit, [R. 21-2 at Answer Number 16 (Philpot Interrogatory Answers); R. 21-5 at 19 (73:12-14); R. 24 at 20 (Philpot Summary Judgment Response)]; he had to relocate several times due to his inability to pay bills [R. 21-5 at 20 (76:10-11).]; alleges his professional reputation in his community was damaged, [R. 21-5 at 23 (87:2-25)]; and implies that this incident possibly impacted his ongoing health issue with low blood pressure, [*Id.* at 24 (90:1-8)]. Philpot also provided the testimony of his friend and former roommate, Mike Roberts, who stated:

> For the next three or four months after Delmas learned that Fenton & McGarvey would not hire him because of the adverse background check, Delmas was very distraught and depressed. He rarely came out of his room in the apartment that we shared. He took to drinking heavily. His financial situation became desparate [sic]. He appeared to be almost completely immobilized by the in-justice [sic] of the situation brought about by the adverse background check.

[R. 24-1 at 2 (Roberts Affidavit).]

In response, Microbilt argues that Philpot's "conclusory testimony" is not enough to establish emotional distress damages. [R. 20-1 at 9.] Furthermore, Microbilt points out that Philpot never sought any medical treatment for his alleged emotional distress. [*Id.*] Indeed, the court for the Northern District of Ohio disregarded a plaintiff's similar testimony regarding damages in *Moore v. First Advantage Enterprise Screening Corporation* by stating "A plaintiff 'must present concrete evidence of such distress (e.g., medical reports) and his own conclusory allegations are not enough.'" *Moore*, No. 4:12-CV-00792, 2013 WL 1662959, at *4 (quoting *Okocha v. HSBC Bank USA, N.A.*, 2010 WL 5122614, at *6–7 (S.D.N.Y. Dec.14, 2010)). However, the facts of *Moore* can be distinguished from those at hand in that the plaintiff in *Moore* "testified that his purported emotional distress resulted from his general inability to find a

job instead of anything specific allegedly done by [defendant]." No. 4:12-CV-00792, 2013 WL 1662959, at *5. In fact, the undisputed evidence in *Moore* proved that the plaintiff was not hired due to a misdemeanor conviction, not due to any inaccurate information reported by the defendant. *Id*. In contrast, Philpot provided testimony suggesting emotional distress due to Microbilt's report, which allegedly prevented him from gaining employment at Fenton & McGarvey. Similarly, in *Smith v. LexisNexis Screening Solutions, Inc.*, the Sixth Circuit found the record evidence to be sufficient to support the jury's award of compensatory damages when the plaintiff and his wife submitted "extensive" statements describing the plaintiff's "shame, anger, and stress that stemmed from financial hardships" after an incorrect criminal background check caused a six week delay in the plaintiff being hired.[2] *Smith*, 837 F.3d 604, 611 (6th Cir. 2016). It is debatable whether the testimony provided by Philpot is as "extensive" as the testimony in *Smith*. However, the evidence provided by Philpot is enough to at least create a genuine dispute of material fact when viewing the record in the light most favorable to the nonmoving party, here Philpot. Despite Microbilt's arguments to the contrary, Philpot has provided testimony that demonstrates more than a "conclusory allegation." *See Moore*, No. 4:12-CV-00792, 2013 WL 1662959, at *4. Though, the Court notes that Philpot's self-diagnosis that this incident possibly impacted his ongoing health issues involving low blood pressure would not be admissible, as it calls for a medical expert. In sum, Microbilt's Motion for Summary Judgment as it pertains to Philpot proving damages pursuant to § 1681o is DENIED.

### B. "Strict Procedures" Under § 1681k(a)(2)

---

[2] The Court notes that the lower court of *Smith*, who's findings the Sixth Circuit upheld regarding damages, explained that the plaintiff's evidence of emotional distress was more detailed than the plaintiffs of *Moore* and *Bach I* because "in both of those cases, the only evidence presented on emotional distress was a single statement contained in an affidavit or interrogatory that the plaintiff experienced certain physical and mental symptoms as a result of the alleged error or conduct." *Smith v. Lexisnexis Screening Sols. Inc.*, 138 F. Supp. 3d 872, 888 (E.D. Mich. 2015), aff'd in part, rev'd in part, 837 F.3d 604 (6th Cir. 2016).

As previously stated, a CRA which furnishes a report containing information likely adverse to a consumer's employment prospects must notify the consumer at the time the report is furnished, *id.* § 1681k(a)(1), unless it maintains "strict procedures" designed to ensure that the information reported is "complete and up-to-date," *id.* § 1681k(a)(2). Microbilt concedes that it did not send a notification of its report to Philpot, therefore, both parties move for summary judgment under § 1681k(a)(2). The two issues of concern are: (1) whether Microbilt adhered to "strict procedures" and (2) whether the information in Microbilt's report to Fenton & McGarvey contained information that was "complete and up-to-date."

   1. **"Complete and Up to Date"**

"The few courts that have had occasion to interpret this section have agreed that '[t]he logical starting point for an analysis of Section 1681k is whether the information provided was complete and up to date. If this is so, then an inquiry into the specific procedures is unnecessary.'" *Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 333 (E.D. Va. 2016) (quoting *Obabueki v. Int'l Bus. Mach. Corp.*, 145 F. Supp. 2d 371, 396 (S.D.N.Y. 2001)). In its Motion for Summary Judgment, Microbilt argues that its strict procedures "insure that Microbilt does not report incomplete or out of date records." [R. 20-1 at 6.] Philpot retorts in its own argument for summary judgment that Microbilt's report was not "complete" because it did not specify that the criminal charge on Philpot's report was for speeding. [R. 24 at 3.]

The Court finds that neither party has satisfied its burden in achieving summary judgment on this matter. It seems the closest factual situation within the Sixth Circuit to the matter at hand would be that of *Poore v. Sterling Testing Systems, Inc.*. In *Poore*, the Eastern District of Kentucky found that a reasonable jury could find that a consumer report containing a DUI

9

conviction was incomplete when the report did not include "the actual name, birthdate or social security number of the person who was convicted of the crime." *Poore*, 410 F. Supp. 2d 557, 572 (E.D. Ky. 2006). In making its determination, the court in *Poore* used the Webster's Collegiate Dictionary of "complete," which defines the term as "having all necessary parts." *Id*. As other courts have recognized, this broad definition proves difficult to apply. *See, e.g., Henderson*, 178 F. Supp. 3d at 334. In an effort to further clarify what makes a report "complete," the comments of the Federal Trade Commission may prove useful: "For example, if the CRA reports an indictment, it must also report any dismissal or acquittal available on the public record as of the date of the report. Similarly, if the CRA reports a conviction, it must report a reversal that has occurred on appeal." FED. TRADE COMM'N, FORTY YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT: AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS 81 (2011)). Logically, if the CRA is required to report any reversal of a conviction, it would probably be required to list the nature of the conviction in the first place.

Furthermore, Philpot highlights a relevant issue concerning a disclaimer located at the bottom of each of the reports furnished to Fenton & McGarvey by Microbilt that states:

> Information contained herein is derived solely from public records, which may not be 100 percent accurate or complete. Users should consult state and federal laws, including the Fair Credit Reporting Act, before using this information in making business decisions based on the results. Neither we nor our vendors or suppliers are liable for claims or damages arising from the use of this data, beyond the cost of the search(es) performed by users. Because mis-identifications [sic] may occur when trying to identify a particular person, based solely upon name and other identifiers, extreme care must be exercised in the review and use of the information available through this site. This information should not be used in legal proceedings. It is recommended that users of this database obtain the original document from the jurisdiction for the purpose of legal proceedings.

[R. 20-4 at 10, 12, 15, 18.] In *Henderson*, the Eastern District of Virginia encountered a similar provision at the bottom of a report sold by one CRA to a third party CRA that disclaimed "any

warranty of completeness or accuracy." 178 F. Supp. 3d at 335. There, the court noted its concern over this disclaimer in denying summary judgment for the CRA. *Id*. The disclaimer found at the bottom of the reports furnished by Microbilt causes this Court similar concern.

Overall, the Court finds that a genuine dispute of material fact exists as to whether the information in Microbilt's report was "complete and up to date." Microbilt provides little argument outside its assurances that its "strict procedures" would not produce "incomplete or out of date records," [R. 20-1 at 6], but Philpot's opposing argument lacks the support of binding case law. This leaves the Court skeptical of ruling in favor of either party as a matter of law. Therefore, the Court finds that neither party has satisfied its burden for summary judgment as it pertains to this portion of § 1681k(a)(2).

2. **"Strict Procedures"**

"The FCRA does not define 'strict procedures.'" *Poore*, 410 F. Supp. 2d at 571. "Federal courts have described 'strict procedures' as 'heightened standards for procedures used to collect information for employment purposes' that are 'necessarily a more stringent standard' than the 'reasonable procedures' standard of 15 U.S.C. § 1681 e(b). *Moore*, No. 4:12-CV-00792, 2013 WL 1662959, at *6 (quoting *Poore*, 410 F. Supp. 2d at 571). Microbilt argues that it is entitled to summary judgment based on the "strict procedures" it maintained through updating information, performing quality assurance, and training its employees regarding FCRA compliance. [R. 20-1 at 6.] Philpot disagrees, arguing that Microbilt has failed to produce evidence of any "strict procedures" beyond the affidavit of Microbilt's Director of Compliance, Melissa Dennis. [R. 24 at 6.] Philpot goes on to suggest types of "strict procedures" Microbilt should be able to describe if it were to survive summary judgment. [*Id*. at 6-7.]

The Court finds a genuine dispute of material fact exists as to whether Microbilt maintained "strict procedures" required by the FCRA in compiling its report. Once again, the Court looks to *Moore* for guidance. There, the Northern District of Ohio found that a CRA, First Advantage, maintained strict procedures when it took three steps:

> First, First Advantage searched its database for potential records. Second, First Advantage engaged a third part contractor to confirm the existence of those potential records. Third, when there was a discrepancy between the information provided by the third party contractor and the results of the database search, First Advantage personnel spoke directly with the court.

*Moore*, No. 4:12-CV-00792, 2013 WL 1662959, at *6. The court reasoned that "there is no evidence to demonstrate that any amount of effort on First Advantage's part would have led to a different result." *Id*. Unlike First Advantage in *Moore*, Microbilt never took an extra step to provide clarity on the unspecified criminal offense listed on the four reports it provided to Fenton & McGarvey. However, as Microbilt points out, the same court of *Moore* later stated in *Smith v. Sterling Infosystems-Ohio, Inc.* that nowhere on its face does § 1681k(a)(2) require a consumer agency to contact the original source of public records information in order to obtain the full criminal or traffic file before furnishing a report. *Smith*, No. 1:16-CV-714, 2016 WL 6092551, at *5 (N.D. Ohio Oct. 19, 2016). Thus, although *Moore* found that those three steps taken by First Advantage amounted to "strict procedures," it does not necessarily follow that a failure to follow those three steps results in an absence of "strict procedures." Similarly, perhaps Microbilt fell short of the process described in *Moore*, but that does not mean its procedures were not "strict." Nor does Microbilt's failure to conform to Philpot's interpretation of "strict procedures" entitle Phillpot to summary judgment. In sum, there is a genuine dispute of material facts as they pertain to § 1681k(a)(2). Microbilt's slim evidence supporting its alleged "strict procedures" no more entitle it to summary judgment than Philpot's own theories as to what Microbilt's evidence

lacked. Therefore, neither movant is entitled to judgment as a matter of law. Both Microbilt's Motion for Summary Judgment and Philpot's Motion for Summary Judgment as they pertain to § 1681k(a)(2) are DENIED.

II.     **Motion for Sanctions**

Under the broad authority of Federal Rule of Civil Procedure 37 and this Court's "inherent power to control discovery and issue appropriate sanctions," Microbilt files a Motion for Sanctions. [R. 29.] Specifically, Microbilt urges the court to sanction Philpot for improper disclosure of confidential information in order to deter Philpot from a repeat offense and deter others from similar conduct. [*Id*. at 2-3.]

Here, Microbilt's concern over deterring Philpot from a repeat offense is unfounded. Counsel for Philpot states that he filed the documents at issue in an envelope marked "confidential," yet they were still filed as a part of the public record. [R. 31 at 2 (Philpot Response to Motion for Sanctions).] Philpot did not act out of bad faith nor has Microbilt provided any proof that his actions were willful. Furthermore, it appears that Microbilt was able to have the particular exhibit placed under seal, and, therefore, suffered no prejudice from Philpot's mistake. [R. 29 at 1; R. 31 at 2.] As for deterrence for bad actors in the future, the Court retains its discretion to impose appropriate sanctions as necessary. Thus, Microbilt's Motion for Sanctions is DENIED.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) Microbilt's Motion for Summary Judgment, [R. 20] is **DENIED**.

(2) Philpot's Motion for Summary Judgment, [R. 21], is **DENIED**.

(3) Microbilt's Motion for Sanctions, [R. 29], is **DENIED**.

**IT IS SO ORDERED**.

cc: Counsel of Record